Tompkins, J.,
delivered the opinion -of the Court.
This was an action on promises, brought before a Justice of the Peace of St. Louis county ; judgment for Chauvin plaintiff; damages assessed at $22. Labarge appealed to the Circuit Court, where the judgment of the Justice of the Peace was reversed; and to reverse the judgment of the Circuit Court, Chauvin sued out his writ or error. The jury in the Circuit Court found, that on the 13th of May, 1824, Joseph Graveline and wife, and Joseph Labarge, made and executed their certain deed indented, by which said Graveline and wife, for and in consideration of $300, to be paid'them in the following manner, to wit: $100 to be paid in the course of two months from the date of the said deed, and the balance, to wit, $200, to bo paid in eight instalments of $25 each, payable every three months, beginning from the 13th of July then next, sold to said Labarge a certain tract of land therein described, and that said Labarge, in order better to secure to said Graveline the payment of the said sum of $300, in the manner and at the times aforementioned, by said deed reconveyed to said Graveline the said land, to hold till the purchase money and interest should be paid, and no longer. The deed is set out in the verdict at full length, and executed by both parties. The jury further found, that on the 8th of June, 1824, said Graveline was indebted to Chauvin in $300, and being so indebted, made and executed a writing under his seal, by which he acknowledged before a Justice of the Peace that he, on that day, assigned for value received, to said Chauvin, a sum of $300, due him from Joseph Labarge, aforesaid, being the consideratio» money of said land sold, as aforesaid, to said Labarge. The jury further found, that *397 on the 9th of said last mentioned month,, said Chauvin informed Labarge, the said debt was assigned to him, and that Labargo then informed Chauvin that he owed Gravaline, on account of the purchase money of said land, only $171 75 ; and that said Labarge then verbally promised Chauvin to pay him that sum when it should become due, according to the provisions in the deed; and the jury further found that on the of December, 1824, said Graveline entered on said deed, as recorded in the office of the Clerk of the Circuit Court of St. Louis county, full satisfaction for the purchase money. It was further found that the deed was never assigned to Chau vin, nor came to his hands, and that the assignment of the purchase money by Graveline to Chauvin, was in consideration of the $300 he owed Chauvin. For the plaintiff in error it is contended, that the money was due from Labarge to Graveline by verbal contract, and that the recital of the sums and times at which they were to be paid in the deed, were evidence of this verbal contract, and that the debt so due is not assignable at law. Yet Labarge could waive the law in his favor, and having by his express promise to pay Chauvin waived the law, the moral obligation to pay is a good consideration to support the p -ojiise; for a Court of Chancery, it is said, would take notice of Chauvin’s right to such a chose in action. We are not aware that a Court of Equity ever took notice of a debt assigned, and which was due by verbal contract; that is to say, we believe that Courts of Equity have taken notice oply of written instruments when assigned ; and if it were true that they would equally protect an assignment of a sum of money due by verbal contract, yet, as our statute has not made such contracts assignable, and has not, consequently, given the assignee of such a contract a right to sue on it in his own name, Graveline, in this case, should have sued Labarge for Chauvin’s use. This we say should have been done, if a sum of money, due by verbal contract, and assigned over, will be taken notice of in a Court of Equity like a bond assigned. But Chauvin has not pursued that course ; and we are reduced to the necessity of inquiring, what is the consideration of Labarge’s promise to pay Chauvin? The assignment was not made at the request of Laharge. He derived no benefit either from Chauvin, to whom the promise was made, or from, any other person; for Graveline gave him nothing for his undertaking; nor did Chauvin sustain any loss at the request of Labarge; indeed we do not learn that he sustained any injury, for Graveline is still liable to him. All the books say that “ a party cannot by his own act make another his debtor.” See Weddle v. Lyman, and Cap. v. Topham, cited in Esp. N. P., and Child v. Morley, where Child paid Morley’s debt, page 177, part 1, top. paging. Even a mere voluntary courtesy will not support an assumpsit. See Osborn v. Governors of Guy’s Hospital, cited in same page of same book. There are eases of actions brought on the implied promise, hut in the case before us Chauvin procures an act to be done which is of no benefit to Labarge, and without the knowledge, loo, of Labarge. This, too, is an act by which we are not informed that Chauvin has sustained any loss J and it is pretended that there is a moral obligation to pay, sufficient to support the express promise made by Labarge, when one of the above cited case3 (Child v. Morley) shows that even the payment of a man’s debt would not raise an assumpsit, unless it had been done at his request. The present case appears more like one where the consideration, if any, is frivolous or groundless; as where A. promised B. to pay him a sum of money, in case B. would make him an estate at will — cited in same book, page 188, from 1 Roll. A. B. 23. Here the consideration, if a consideration it can be called, is, that Chauvin had, without the knowledge, and conse *398 quenlly not requested by Labarge, taken for his own benefit what is called an assignment of a sum of money, due from Labarge to Graveline, It has been decided that where a party is under a moral obligation to do any thing, a promise made of payment, or a reward for doing it, shall not be deemed a nudum pactum. See the rule Ibidem, page 189, and the cases there cited. In the first of them, Scott v. Nelson, it was decided that the father of a bastard child, who had made an express promise to pay the plaintilf for maintaining the ohild, without being requested so to do, was legally bound by such promise. In the second, the Apothecary, without any previous order of the Overseors of the Poor, attended a sick woman of their parish, and they afterwards promised to pay. The promise was not held to be wudum pactum. In these cases, as in all the others cited in support of this rule, the party promising had received from the party to whom the promise is made, such services as he would have been compelled to pay for, had they been performed at his request, and this kind of consideration is what the law calls a moral obligation. It cannot be pretended that the present case is one of that kind.
It is the opinion that the judgment of the Circuit Court be affirmed.